IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 1, 2021

**IN RE LAUREN F.**

**Appeal from the Chancery Court for Henderson County**
**No. 27367      James F. Butler, Chancellor**

_____

**No. W2020-01732-COA-R3-PT**

_____

This case involves a petition to terminate the parental rights of a child's biological father and for step-parent adoption. The trial court terminated the biological father's rights on the ground of abandonment for failure to visit, abandonment for failure to support, and wanton disregard. The court held that termination was in the child's best interest. Biological father appeals asserting that the trial court erred in not granting him a continuance on the day of trial and that the trial court erred in its best interest determination. We vacate the trial court's conclusion that termination was warranted on the grounds of abandonment by failure to support and abandonment by engaging in conduct that exhibited wanton disregard for the child's welfare, but we affirm the trial court's conclusion that the biological father's rights should be terminated on the ground of failure to visit in the four months preceding his incarceration and that terminating his parental rights is in the best interest of the child. Therefore, we affirm the trial court's termination of the biological father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in Part, Reversed in Part, and Affirmed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON, II, J., joined.

Samuel Wayne Hinson, Lexington, Tennessee, for the appellant, Nicholas F.

Leanne Austin Thorne, Lexington, Tennessee, for the appellees, Jessica R. and James R.

**OPINION**

Jessica R.[1] ("Mother") is the biological mother of Lauren F. (born in February 2012); Nicholas F. ("Father") is the child's biological father. Mother and Father were never married. At the time of the child's birth, Father was in "Teen Challenge," a drug rehabilitation program. When Father completed the rehabilitation program, Lauren was three months old, and Father and Mother resumed a relationship. Father remained involved in Lauren's life for three years until he relapsed and began using methamphetamines again. Mother discontinued her relationship with Father in 2015.

On April 27, 2016, Mother and Father entered into an agreed order regarding parenting time for Lauren. Mother was designated as primary residential parent, and Father received visitation every other weekend from Friday at 5:00 p.m. until Sunday at 5:00 p.m. The agreed order allowed Mother to request Father to take "up to six (6) random nail drug screens for up to the first twenty-four (24) months following entry of this Order." An Order for Wage Assignment was also entered on April 27, 2016 setting Father's monthly child support obligation at $285 per month with an additional $50 per month for "arrearages/medical bills."

In the spring of 2018, Father stopped exercising his weekend parenting time with Lauren and did not provide Mother with a reason for discontinuing visitation. After missing approximately eight consecutive weeks of visitation, Father attended Lauren's kindergarten graduation in May 2018. According to Mother, Father appeared "high" at the graduation, and she requested him to take a drug test. Father took a drug test that was positive for methamphetamines. Mother testified that she would have allowed Father to resume visitation with the child if he produced a negative drug screen, which he failed to do. Father sent Lauren a Christmas gift in December 2018, but he did not see her in person at any point after the May 2018 graduation.

Father was arrested in January 2019 for possession of hydrocodone and drug paraphernalia. On January 23, 2019, he pled guilty to "simple possession," a class A misdemeanor.

In March 2019, Mother married James R. ("Step-Father"); they have one daughter together. On April 23, 2019, Mother and Step-Father (collectively referred to as "Petitioners") filed a Petition for Termination of Parental Rights and Adoption by a Step-Parent asserting the following grounds for termination of Father's parental rights:

1. General Abandonment as defined in T.C.A. § 36-1-102(1)(a)(i) and [sic] in that he has willfully failed to make reasonable payments towards the

---

[1] "Because this appeal involves a minor, all participants will be identified in a manner that protects the privacy of the minor." *In re Bentley D.*, 537 S.W.3d 907, 909 n.2 (Tenn. 2017).

child's support (other than token payments); for a period exceeding four (4) consecutive months immediately preceding the filing of this Petition and[] has failed to visit the child for a period exceeding four (4) consecutive months immediately preceding the filing of this Petition.

2. The Respondent is incompetent to adequately provide for the further care and supervision of the child because the Respondent's mental condition is presently so impaired and so likely to remain so that it is unlikely that the Respondent will be able to assume or resume care of and responsibility for the child in the near future[2], to wit:

    a. Father has had an ongoing and persistent addiction to methamphetamine which has resulted in his repeated incarceration;

    b. Father has again relapsed and has been incarcerated multiple times in the last three (3) months.

The Return on Service of Summons shows the petition was served on Father at the Henderson County Jail where he was incarcerated.

On April 30, 2019, Father requested the trial court to appoint him a lawyer and also submitted a Uniform Affidavit of Indigency in which he swore, under penalty of perjury, that he had no income. The trial court entered an order appointing Father counsel on May 17, 2019. The Order was mailed to Father at "J[A]COA," a drug rehabilitation facility in Jackson, Tennessee. The order included his appointed counsel's contact information and required Father to "maintain contact with counsel, cooperate with counsel, and keep counsel apprised of Respondent's contact information."

Father filed an answer to the petition for termination on January 21, 2020, generally denying the grounds for termination but asserting no affirmative defenses. *See* Tenn. Code Ann. § 36-1-102(1)(I) (requiring "[t]he absence of willfulness" to the ground of

---

[2] Although not cited explicitly in the petition, this ground for termination derives from Tenn. Code Ann. § 36-1-113(g)(8)(B) (2019) which states:

The court may terminate the parental or guardianship rights of that person if it determines on the basis of clear and convincing evidence that:

(i) The parent or guardian of the child is incompetent to adequately provide for the further care and supervision of the child because the parent's or guardian's mental condition is presently so impaired and is so likely to remain so that it is unlikely that the parent or guardian will be able to assume or resume the care of and responsibility for the child in the near future; and

(ii) That termination of parental or guardian rights is in the best interest of the child[.]

abandonment to be "an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure"). On that same day, Father filed a Motion for Visitation stating, in part:

1. That this matter is currently before this Honorable Court on a Petition to Terminate Parental Rights and Adoption by Step-Parent.
2. That prior to the filing of said Petition, [Father] was incarcerated in the Henderson County Sheriff's Department and could not exercise visitation.
3. That since the filing of said Petition, [Father] has been released and is working.
4. That since being released, [Father] has consistently attempted to visit with his minor child.
5. That, upon information and belief, Petitioners are refusing to allow [Father] to visit or have any contact whatsoever with said minor child.

On September 9, 2019, Father answered interrogatories propounded by the Petitioners. In response to an interrogatory asking whether he has "medical, psychological, alcohol, substance abuse, or gambling problems[,]" he stated: "Yes. I have had a problem with Meth, marijuana and pills for the last 15 years. I've been to Memphis Recovery Center, Teen Challenge and JACOA. I have a dual diagnosis, which is substance abuse/mental health disorder."

On August 6, 2020, the parties entered into an agreed order to set the case for trial on November 19, 2020. On the date of trial, Father's attorney presented an oral motion for continuance, stating:

I was appointed to represent [Father] several months ago. We initially had stayed in good contact. We answered interrogatories, and then I had lost contact with [Father]. . . . and found out recently that he was incarcerated in August of this year, and as such - - because of that obviously [Father] and I have not had an opportunity to meet in several months and discuss evidence and witnesses. And on that basis for the record we are asking for a continuance on this matter to give me time now that I know where he is to prepare for the case.

The trial court denied the motion for continuance and proceeded with Father, Mother, and Step-Father testifying.

On December 3, 2020, by letter sent to the parties, the trial court issued findings of fact and conclusions of law and requested Petitioner's counsel to prepare an order incorporating the court's ruling for entry. An order terminating Father's parental rights was entered on December 17, 2020. The court determined that the "relevant period" for abandonment was December 23, 2018 through April 23, 2019, the four-month period

- 4 -

before the petition was filed.  In a separate section, the court summarized the grounds for termination as follows:

1.   General abandonment as defined in Tennessee Code Annotated § 36-1-102(1)(a)(i) – failure to make reasonable payments toward the child's support other than token payments and failure to visit for a period exceeding four consecutive months immediately preceding the filing of the Petition.
2.   Persistent conditions, to wit, Father's mental capacity is so impaired that he is unlikely to be able to assume or resume care of and responsibility for the child in the near future because of on going and persistent addiction to methamphetamine resulting in his repeated incarceration.

The court summarized the testimony of the parties and then made the following conclusions of law:

The Court finds by clear and convincing evidence that the Father has willfully failed to support the child during the relevant period and before that, and according to the Exhibit 3, there were no further support payments after August, 2019.  The Court finds that the Father has also willfully failed to visit the child during the relevant period or to seek visitations during that time, or before that time up until he requested visitations after the Petition for Termination has been filed and served upon him and he had obtained counsel.  The Court further finds by clear and convincing evidence that prior to the Father's incarceration, that he engaged in conduct that exhibits a wanton disregard[3] for the welfare of the child and that this is demonstrated by the fact he is incarcerated at the time of trial.

The trial court made no conclusions of law regarding the allegation related to mental incompetence.   The court then concluded that Petitioners had proven by clear and convincing evidence that termination of Father's rights was in the child's best interest. Father appeals raising two issues for our review:  whether the trial court erred in failing to grant him a continuance and whether the trial court incorrectly found that termination was in the child's best interest.

---

[3]   This ground of termination derives from Tenn. Code Ann. § 36-1-102(1)(A)(iv) which states, in pertinent part:

[T]he parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution or such action or proceeding, and . . . the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

STANDARD OF REVIEW

Under both the federal and state constitutions, a parent has a fundamental right to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 249-50 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). Although this right is fundamental, it is not absolute and may be terminated in certain situations. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has identified circumstances "'in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B., IV*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)); *see* Tenn. Code Ann. § 36-1-113(g).

Tennessee Code Annotated section 36-1-113 provides the grounds and procedures for terminating parental rights. First, a petitioner seeking to terminate parental rights must prove that at least one ground for termination exists. Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d at 251. Second, a petitioner must prove that terminating parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

The termination of a parent's rights is one of the most serious decisions courts make because "[t]erminating parental rights has the legal effect of reducing the parent to the role of a complete stranger," *In re W.B., IV*, 2005 WL 1021618, at *6, "and of 'severing forever all legal rights and obligations of the parent or guardian.'" *Id.* (quoting Tenn. Code Ann. § 36-1-113(l)(1)). Consequently, a parent has a constitutional right to fundamentally fair procedures during termination proceedings. *In re Hannah C.*, No. M2016-02052-COA-R3-PT, 2018 WL 558522, at *2 (Tenn. Ct. App. Jan. 24, 2018) (citing *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016)).

Tennessee law ensures fundamental fairness in termination proceedings by requiring a heightened standard of proof—clear and convincing evidence. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Carrington H.*, 483 S.W.3d at 522. Before a parent's rights may be terminated, a petitioner must prove both the grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Serenity B.*, No. M2013-02685-COA-R3-PT, 2014 WL 2168553, at *2 (Tenn. Ct. App. May 21, 2014) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)). "The requirement of clear and convincing evidence 'minimizes the risk of an erroneous decision' in a case with the

profound consequences of terminating parental rights." *In re Mattie L.*, 618 S.W.3d 335, 342 (Tenn. 2021) (quoting *In re Keri C.*, 384 S.W.3d 731, 744 (Tenn. Ct. App. 2010)).

We review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *In re Serenity B.*, 2014 WL 2168553, at *2. In light of the heightened standard of proof, we must then make our own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524.

Father also appeals the trial court's refusal to grant him a continuance. We review a "trial court's decision to deny a motion for continuance under the abuse of discretion standard of review." *In re A'Mari B.*, 358 S.W.3d 204, 213 (Tenn. Ct. App. 2011) (citing *State Dep't of Children's Servs. v. V.N.*, 279 S.W.3d 306, 317 (Tenn. Ct. App. 2008)). A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

ANALYSIS

A. Motion for Continuance.

Father asserts the trial court erred when it denied his motion for continuance to "properly prepare for trial." Father presented his motion on the day of trial after failing to maintain contact with his appointed counsel after his incarceration. Father blames his failure to maintain contact with his attorney on the "pandemic and policies of the Henderson County Sheriff Department at the time." In his brief, Father does not point to any specific policy that interfered with his ability to maintain contact with his counsel, and he does not indicate he put forth any effort to connect with his counsel from jail. He simply states that he did not know his counsel's phone number.

Father was in communication with his counsel prior to his incarceration and was aware of his duty to "maintain contact with counsel, cooperate with counsel, and keep counsel apprised of [his] contact information." In refusing to grant the continuance, the trial court acknowledged its obligation to ensure that hearings on petitions to terminate parental rights are heard expeditiously. *See* Tenn. Code Ann. § 36-1-113(k) ("The court shall ensure that the hearing on the petition takes place within six (6) months of the date that the petition is filed, unless the court determines an extension is in the best interests of the child."); Tenn. Code Ann. § 36-1-124(c) ("It is the intent of the general assembly that the permanency of the placement of a child who is the subject of a termination of parental rights proceeding or an adoption proceeding not be delayed any longer than is absolutely

necessary consistent with the rights of all parties, but that the rights of the child to permanency at the earliest possible date be given priority over all other civil litigation . . . ."). The petition for termination was filed in April 2019, and the trial was held in November 2020. We cannot say that the trial court abused its discretion in declining to grant Father a continuance, especially where Father was informed by court order of his duty to maintain contact with his counsel and was physically present to testify at the hearing. We affirm the trial court's denial of Father's motion for a continuance.

### B. Grounds for Termination of Father's Parental Rights.

Although Father has not raised the grounds for termination of his parental rights as a separate issue on appeal, we must "review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest, regardless of whether the parent challenges those findings." *In re Carrington H.*, 483 S.W.3d at 525-26.

We begin by analyzing the manner in which the grounds for terminating Father's parental rights were pled in the petition. Regarding the importance of properly alleging the grounds for termination, this Court has held as follows:

> Parental rights can only be terminated on grounds that were alleged in the termination petition. *See In re M.J.B.*, 140 S.W.3d 643, 655-56 (Tenn. Ct. App. 2004). Notice is "a fundamental component of due process." *In re W.B., IV*, M2004-00999-COA-R3-PT, 2005 WL 1021618, at *13 (Tenn. Ct. App. Apr. 29, 2005); *see also Keisling v. Keisling*, 92 S.W.3d 374, 377 (Tenn. 2002) ("Basic due process requires 'notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (citation omitted)). Pleadings should give the opposing party enough notice of the issues to prepare a defense. *Keisling*, 92 S.W.3d at 377. In the context of parental termination, due process requires that the parent be notified of the alleged grounds for termination. *In re Jeremiah N.*, No. E2016-00371-COA-R3-PT, 2017 WL 1655612, at *8 (Tenn. Ct. App. May 2, 2017).

*In re Ashlynn H.*, No. M2020-00469-COA-R3-PT, 2021 WL 2181655, at *3 (Tenn. Ct. App. May 28, 2021). From our review of the grounds set forth in the petition, Mother and Step-Father alleged three grounds for termination of Father's parental rights:  1) abandonment by failure to visit in the four months preceding the filing of the petition (Tenn. Code Ann. §§ 36-1-113(g)(1); 36-1-102(1)(A)(i)); 2) abandonment by failure to support in the four months preceding the filing of the petition (Tenn. Code Ann. §§ 36-1-113(g)(1); 36-1-102(1)(A)(i)); and 3) Father's mental condition prevented him from being able to resume caring for the child (Tenn. Code Ann. § 36-1-113(g)(8)).

In its written findings of fact and conclusions of law, the trial court listed the following grounds for termination of Father's rights.

1. General abandonment as defined in Tennessee Code Annotated § 36-1-102(1)(a)(i) – failure to make reasonable payments toward the child's support other than token payments and failure to visit for a period exceeding four consecutive months immediately preceding the filing of the Petition.
2. Persistent conditions, to wit, Father's mental capacity is so impaired that he is unlikely to be able to assume or resume care of and responsibility for the child in the near future because of on going and persistent addiction to methamphetamine resulting in his repeated incarceration.

Then, in its conclusions of law, the trial court held the following three grounds for termination of father's parental rights were proven by clear and convincing evidence:

The Court finds by clear and convincing evidence that the Father has *willfully failed to support* the child during the relevant period . . . . The Court finds that the Father has also *willfully failed to visit* the child during the relevant period . . . . The Court further finds by clear and convincing evidence that prior to the Father's incarceration that the Father *engaged in conduct that exhibits a wanton disregard for the welfare of the child* . . . .

(Emphasis added). We will review each ground the trial court relied upon to terminate Father's parental rights in turn.

a. Abandonment, Generally.

A court may terminate parental rights when "[a]bandonment by the parent or guardian, as defined in § 36-1-102, has occurred." Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated section 36-1-102(1)(A) sets forth five different definitions of "abandonment" upon which termination of parental rights can be predicated. The petition for termination of Father's rights relied upon Tenn. Code Ann. § 36-1-102(1)(A)(i) as grounds for termination which defines abandonment as follows:

For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

However, the record shows that Father was incarcerated at the time Mother and Step-Father filed the petition to terminate his rights. Therefore, Tenn. Code Ann. § 36-1-102(1)(A)(iv)[4] provided the applicable definition of abandonment:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has failed to visit or has failed to support or has failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

As explained below, neither Petitioners' failure to plead abandonment by failure to support and visit under subpart (iv), nor the trial court's erroneous use of abandonment by failure to support and visit under subpart (i) to terminate Father's rights is a basis for reversal in this case.

We begin by defining the applicable four-month period during which we must examine whether Father visited and supported the child. Pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(iv) the court was required to consider the four-month period immediately preceding Father's *incarceration*. Although the trial court acknowledged that "Father was served with the Petition and a summons on April 24, 2019 in person at the Henderson County Jail where he was incarcerated[,]" the court did not factor in Father's incarceration when defining the relevant period for abandonment. Instead, the court looked at the four-month period before the petition was filed: December 23, 2018 through April 23, 2019.[5] Although not explicitly stated in the record, a review of Father's testimony and an Amended Warrant dated June 29, 2020, shows that Father was incarcerated on April 9, 2019 when his suspended sentence from January 23, 2019 for "simple possession" was reinstated. Specifically, he testified as follows:

> Q. . . . it said that you – your sentence began on January the 23rd of 2019 --

---

[4]   Tennessee Code Annotated section 36-1-102 has been amended several times in recent years. Throughout this opinion we apply the version of the statute that was in effect on April 23, 2019, the date the petition was filed.

[5] We note that the applicable four-month period under Tenn. Code Ann. § 36-1-102(1)(A)(i), had it applied in this case, should have been December 23, 2018 through April 22, 2019. *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014) (holding that the applicable four-month time period is "the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed").

- 10 -

A. Uh-huh

Q. - - and you were restarted on that sentence on April the 9th of 2019?

A. Uh-huh.

Q. And that would be for your failure to report; is that correct?

A. Yes, ma'am.

Q. So she restarted you because you failed to report?

A. Uh-huh.

Q. Three months after the sentence began or a little less?

A. Uh-huh.

Q. Is that a yes? I'm sorry.

A. Yes, ma'am.

Therefore, for purposes of establishing abandonment, the proper period to consider was December 9, 2018 to April 8, 2019, the four-month period preceding Father's incarceration. *See In re D.H.B.*, No. E2014-00063-COA-R3-PT, 2015 WL 1870303, at *8 (Tenn. Ct. App. Apr. 23, 2015) (interpreting the four-month period "immediately preceding" incarceration as ending on the day before the actual date of incarceration). However, we have concluded that the trial court's error in considering the incorrect four-month period (which was a difference of only thirteen days) is harmless, because the record and the trial court's findings of fact and conclusions of law contain sufficient evidence to examine whether Father visited and supported the child during the correct four-month period. *See In re J'khari F.*, No. M2018-00708-COA-R3-PT, 2019 WL 411538, *9 (Tenn. Ct. App. Jan. 31, 2019) (identifying cases in which this Court has determined that a miscalculation of the relevant four-month period can be considered harmless); *In re Steven W.*, No. M2018-00154-COA-R3-PT, 2018 WL 6264107, at *12 (Tenn. Ct. App. Nov. 28, 2018) (holding that the court's use of an incorrect relevant time period could be considered harmless error where the proof of abandonment encompassed the correct time period); *In re Navada N.*, 498 S.W.3d 579, 600 n.12 (Tenn. Ct. App. 2016) (considering the grounds for termination even though the four-month period was miscalculated in "the interest of providing a speedy resolution for [the child].");  *see also* Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2019) (noting that a finding that the parent has abandoned the child "in excess of four (4) months that would necessarily include the four (4) months of nonincarceration immediately prior to the institution of the action, but which does not precisely define the relevant four-month period, shall be sufficient to establish abandonment."); *but see In re Haskel S.*, No. M2019-02256-COA-R3-PT, 2020 WL 6780265, at *6 (Tenn. Ct. App. Nov. 18, 2020) (reversing the grounds of abandonment because DCS did not arrive at the correct statutory four-month period before filing its petition for termination of parental rights in addition to stating at trial that it was withdrawing these grounds for termination).  We proceed to determine whether there is clear and convincing evidence to support a holding that Father failed to visit and support the child from December 9, 2018 through April 8, 2019.

b.  Abandonment by Failure to Visit

The trial court found clear and convincing evidence that Father abandoned the child by failing to visit.  A failure to visit occurs when a parent, "for a period of four (4) consecutive months, [fails] to visit or engage in more than token visitation. That the parent had only the means or ability to make very occasional visits is not a defense to failure to visit if no visits were made during the relevant four-month period[.]"  Tenn. Code Ann. § 36-1-102(1)(E).  "Token visitation" is "visitation, under the circumstances of the individual case, [that] constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child[.]"  Tenn. Code Ann. § 36-1-102(1)(C).  At trial, Father admitted that he had not seen his daughter since her kindergarten graduation in May 2018, nearly a year before his incarceration, but he testified that he was prevented from visiting with Lauren by Mother.  Therefore, we must determine whether Father's failure to visit his daughter was willful.

Prior to July 2018, a petitioner seeking to terminate a parent's rights based on abandonment bore the burden of proving that the parent's failure to support was "willful."  *See* Tenn. Code Ann. § 36-1-102(1)(A)(i) (2016).  However, the Tennessee General Assembly amended Tenn. Code Ann. § 36-1-102(1)(A)(i) on July 1, 2018, removing the willfulness requirement from the definition of abandonment by failure to visit.  *See* 2018 Tenn. Pub. Acts ch. 875, § 2.  The version of the statute applicable to Father in this case states:

> It shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful.  The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful.  Such defense must be established by a preponderance of the evidence.  The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure.

Tenn. Code Ann. § 36-1-102(1)(I).  Father did not raise his lack of willfulness as an affirmative defense in his answer to the petition to terminate his rights.  Therefore, pursuant to Tenn. Code Ann. § 36-1-102(1)(I), he waived the absence of willfulness as a defense to the ground of abandonment by failure to visit and support.  TENN. R. CIV. P. 12.08 (specifying that, in general, defenses not raised by motion or answer are waived); *see In re Ashlynn H.*, No. M2020-00469-COA-R3-PT, 2021 WL 2181655, at *4 (Tenn. Ct. App. May 28, 2021) (finding a father who failed to plead the absence of willfulness in his response to the petition to terminate parental rights waived it as a defense to the ground of abandonment by failure to support).  However, Petitioners did not object to testimony regarding willfulness at trial, and they testified regarding Father's requests to visit the child and their response to his request at length.  Tenn. R. App. P. 36(a); *see also In re Braelyn S.*, 2020 WL 4200088, at *4 n.3 (citing *McLemore v. Powell*, 968 S.W.2d 799, 803 (Tenn.

- 12 -

Ct. App. 1997) (discussing the standard for trial by implied consent)). In light of Petitioners failure to object to this testimony, we find the issue of willfulness was tried by implied consent.

Father bore the burden of proving by a preponderance of the evidence that his failure to support was not willful. Tenn. Code Ann. § 36-1-102(1)(I); *In re Brian W.*, No. M2020-00172-COA-R3-PT, 2020 WL 6390132, at *3 (Tenn. Ct. App. Oct. 30, 2020); *In re Braelyn S.*, No. E2020-00043-COA-R3-PT, 2020 WL 4200088, at *4 (Tenn. Ct. App. July 22, 2020). Father did not carry that burden. When considering "willfulness" in the context of the parental termination statues, we have previously explained the concept as follows:

> Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.
>
> Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty, or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child.

*In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005) (citations and footnotes omitted); *see also In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013) ("A parent cannot be said to have abandoned a child when his failure to visit or support is due to circumstances outside his control."). It is undisputed that Father did not visit his daughter in the four months preceding his incarceration. His testimony was clear:

> Q. But you also admit that from April of 2018 up until this was filed in April of 2019, you did not visit with your daughter?
> A. I was told I couldn't, so yes, ma'am.
> Q. You didn't visit?
> A. Yes, ma'am.
> Q. And you didn't ask the Court for any help with that?
> A. No.

Father asserted he was denied visitation with the child, but he testified he only asked for and was denied visitation on one occasion after the graduation incident:

> Q. I also heard you say that you were only denied visitation one time by [Mother]
> A. Correct.

Q. So all these other times you talked about that you were denied visitation, it was one occasion?

A. I was denied, yes –

Q. Once.

A. – one time.

Q. You didn't ask any time other than one time?

A. Not me personally, no.

Mother testified that Father voluntarily stopped exercising his weekend visitation approximately two months before the child's kindergarten graduation. She also testified Father would have been entitled to resume visits had he provided her with a negative drug screen:

Q. . . . If he had ever produced a negative drug screen, would you have allowed him to see the child?

A. Yes. I would have had no choice.

Q. And did you express that to him?

A. Yes, multiple times.

Q. And what was his response?

A. I probably shouldn't say this on the microphone. He would just curse me out every time, that he didn't owe me a drug screen.

This Court has previously held that a father's failure to visit was willful where he failed to produce a negative drug screen in order to be permitted to visit with the child. *In re Elijah B.*, No. E2010-00387-COA-R3-PT, 2010 WL 5549229, at *8 (Tenn. Ct. App. Dec. 29, 2010). In sum, Father didn't visit Lauren for nearly a year preceding his incarceration and certainly not within the relevant period. In addition, he made no effort to petition the court for assistance to reinstate his visitation, and he failed to provide a negative drug screen to show Mother he was not abusing drugs and was therefore entitled to visitation. From our review of the testimony and evidence in the record, we conclude there is clear and convincing evidence to support the trial court's termination of Father's parental rights on the ground of abandonment by failure to visit.

### c. Failure to Support.

The trial court found clear and convincing evidence that Father abandoned the child by failing to support her. For purposes of Tenn. Code Ann. § 36-1-102(1)(A)(iv), "failed to support" or "failed to make reasonable payments toward the support of the child" means "the failure, for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). "'[T]oken support' means that the support, under the circumstances of the individual case, is insignificant given the parent's means[.]" Tenn. Code Ann. § 36-1-102(1)(B). "A parent's means includes 'both income and available

- 14 -

resources for the payment of debt.'" *In re Josiah T.*, No. E2019-00043-COA-R3-PT, 2019 WL 4862197, at *7 (Tenn. Ct. App. Oct. 2, 2019) (quoting *In re Adoption of Angela E.*, 402 S.W.3d 636, 641 (Tenn. 2013)).

Regarding support, the trial court stated, "Father admitted that per Exhibit 3, during the relevant period, that he paid $233.12 in support.  He further admitted that he paid $200.00 of that amount to stay out of jail."  Based on this fact, the trial court concluded, "by clear and convincing evidence that the Father has willfully failed to support the child during the relevant period and before that, and according to Exhibit 3, there were no further support payments after August 2019."  Exhibit 3 is a child support payment record from the Department of Human Services showing the child support Father paid from June 17, 2016 until August 9, 2019.[6]   Father paid $11,275.44 in child support during that time period, comprised mostly of weekly payments of $77.30.  During the four-month period preceding his incarceration—December 9, 2018 through April 8, 2019—Father testified that his "family" helped him make one payment of $200.00 on March 20, 2019, and he testified that he gave the child a Christmas gift in December 2018.

While not explicitly stating so, the trial court must have considered this $200.00 payment and Christmas gift to be "token" support. *See* Tenn. Code Ann. § 36-1-102(1)(D).  We note that the burden was on the Petitioners to prove that Father's payments were "token support" within the meaning of the statute.  This Court has previously clarified that "[a]lthough related, the concept of 'token support' is distinct from the concept of 'willfulness' in failing to support. The parent bears the burden of proving that a failure to support was not willful." *In re Josiah T.*, 2019 WL 4862197, at *7 n.6 (citing Tenn. Code Ann. § 36-1-102(1)(I)).  While $200.00 is certainly not the full amount of his child support obligation during the four-month period, the payment is not necessarily "insignificant given [his] means." *Id.* Although there was not extensive testimony regarding Father's "means" during the relevant time period, he explained that his failure to pay the full amount of support ordered was due to his unemployment:

> Q.  Okay.  And so it's your testimony here today that you've consistently paid your support obligation?
> A.  Except for a few months, yes, ma'am.  I went through a rough divorce and lost my job.

---

[6]  When referencing Exhibit 3, the trial court indicated that Father discontinued child support payments after August 2019.  We note that this may not be the case.  The last page of Exhibit 3 states: "Pursuant to T.C.A.§ 24-7-121, this payment record may be used as legal evidence in a child support hearing.  Financial activity may occur after printing which will not be reflected on this document."  According to a date shown at the top left-hand corner of the document, the payment history was printed on August 22, 2019; therefore, no payments after that date would have been captured on the print-out.  Regardless of whether Father continued making payments after Exhibit 3 was printed, our focus is on the four-month period preceding Father's incarceration, not on his subsequent payment history.

. . .

Q. Okay so at least in the six months to a year leading up to this petition being filed, the only period of time where there weren't regular garnished payments being made was the period of time where you were unemployed?

A. Yes, sir.

When Father completed his incarceration, and after his time in the drug rehabilitation facility, he found employment at Forestwood Farms and resumed his child support payments.

Based on our review of the record, we conclude there is not clear and convincing evidence to show that Father's payment of $200.00 and his Christmas gift to Lauren was merely token support. Father was unemployed and had no income during the four months prior to his incarceration. Therefore, we have determined that the record does not support the trial court's finding that the ground of abandonment by failure to support was proven by clear and convincing evidence, and we reverse the portion of the trial court's order terminating Father's rights on that basis.

### d. Abandonment by Engaging in Conduct that Exhibits Wanton Disregard.

As illustrated above, the third ground the trial court relied upon to terminate Father's parental rights, wanton disregard for the welfare of the child prior to incarceration under Tenn. Code Ann. § 36-1-102(A)(1)(iv), was not pled in the petition to terminate his rights. Regarding procedural requirements in parental termination cases, this Court has reiterated:

> [Courts must] "strictly apply the procedural requirements in cases involving the termination of parental rights." *Weidman v. Chambers*, No. M2007-02106-COA-R3-PT, 2008 WL 2331037, at *6 (Tenn. Ct. App. June 3, 2008) (citing *In re W.B. IV*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618 at *10 (Tenn. Ct. App. Apr. 29, 2005) and *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004)). And a fundamental component of due process is proper notice of the issues to be tried in the court. *In re W.B. IV*, 2005 WL 1021618, at *13. So unless a ground for termination is tried by implied consent, *see In re Alysia S.*, 460 S.W.3d 536, 564 (Tenn. Ct. App. 2014), parental rights may be terminated "only upon the statutory ground(s) alleged in the petition because otherwise the parent would be 'disadvantage[d] in preparing a defense.'" *In re Anthony R.*, No. M2012-01412-COA-R3-PT, 2013 WL 500829, at *4 (Tenn. Ct. App. Feb. 8, 2013) (quoting *In re W.B. IV*, 2005 WL 1021618, at *10).

*In re Boston G.*, No. M2019-00393-COA-R3-PT, 2020 WL 2070399, at *3 (Tenn. Ct. App. Apr. 29, 2020). Our review of the allegations in the petition to terminate Father's parental

- 16 -

rights confirms that Father was not put on sufficient notice that his parental rights could be terminated on the ground of abandonment by wanton disregard. *See In re Johnny K.F.*, No. E2012-02700-COA-R3-PT, 2013 WL 4679269, at *7 (Tenn. Ct. App. Aug. 27, 2013) (citing *In re Audrey S.*, 182 S.W.3d 838, 871 (Tenn. Ct. App. 2005) (finding father was not put on sufficient notice that his parental rights could be terminated on the ground of abandonment by wanton disregard especially because the ground considers conduct that is not confined to the four months leading to a parent's incarceration). Neither the word "wanton" nor the word "disregard" appear in the petition, and the pertinent statutory definition for termination is not specifically referenced. Therefore, we find that Father lacked proper notice from the petition that his parental rights could be terminated on the basis of abandonment by wanton disregard.

This does not conclude our analysis, however, because "'a ground for termination not included in the petition can be properly found if [it] was tried by implied consent.'" *In re Alleyanna C.*, No. E2014-02343-COA-R3-PT, 2015 WL 4773313, *6 (Tenn. Ct. App. Aug. 10, 2015) (quoting *In re Alysia S.*, 460 S.W.3d 536, 564 (Tenn. Ct. App. 2014)). To support a finding that the ground of wanton disregard was tried by implied consent, it must be clear from the record that any "evidence presented that is relevant to the unpled ground had no relevance to any other issue being presented to the Trial Court." *In re Johnny K.F.*, 2013 WL 4679269, at *8 (citing *In re S.J.M.*, No. M2009-01080-COA-R3-PT, 2009 WL 4039430, at *3 (Tenn. Ct. App. Nov. 20, 2009)). Our review of the record confirms that the ground of wanton disregard was not tried by implied consent. At the beginning of the trial, the judge stated:

> THE COURT: . . . All right. In this case the grounds, as I understand it, are abandonment – let's see. All right. And that is specifically failure to support and specifically failure to visit. Father is alleged to be inadequately able to care for the child. Persistent conditions.[7] Is that it?
>
> [Petitioner's Attorney]: Yes, Your Honor. It would be fair to support other than token payments, I think there will be some proof that there was about $200 paid in the four months, and 230 and change, and also failure to visit, and, as the Court pointed out, failure to adequately care and supervise because the respondent's condition is such that he cannot assume care and responsibility of the child, and that would be specifically due to a persistent addiction to methamphetamine resulting in repeated incarcerations, and that would be the second ground other than abandonment under both sub parts.
>
> THE COURT: All right. Okay. I got that.

---

[7] Ultimately, the trial court did not make a ruling regarding the ground of persistent conditions.

In addition, any testimony about Father's conduct prior to his incarceration was relevant to the court's best interest analysis, not only to the unpled ground of wanton disregard. Therefore, we find that the ground of wanton disregard was not properly raised in the pleadings and was not tried by consent of the parties. We vacate the trial court's holding that Father's parental rights should be terminated on the ground of wanton disregard.

Having found that the proof clearly and convincingly establishes one ground for termination of Father's parental rights, we move on to consider whether termination of Father's rights was in the child's best interest. *In re Valentine*, 79 S.W.3d at 546 (noting that the petitioner need only establish the existence of one statutory ground to support termination).

C. Best Interest.

Next, we consider whether the trial court properly determined that termination of Father's parental rights was in the best interest of the child. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. A finding that at least one ground for termination of parental rights exists does not necessarily require that a parent's rights be terminated. *In re Audrey S.*, 182 S.W.3d at 877. Because some parental misconduct is redeemable, our termination of parental rights statutes recognize that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* A court must view the child's best interest from the perspective of the child, not that of the parent. *Id.* at 878. The facts considered in the best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). Once a court makes the underlying factual findings, it should "consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest." *Id.*

When considering whether terminating a parent's rights to a child is in the child's best interest, a trial court must consider the nine factors enumerated in Tenn. Code Ann. § 36-1-113(i).[8] A trial court is not required to find that each of the enumerated factors exists before concluding that it is in the best interest of the child to terminate a parent's rights. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Although in some circumstances "the consideration of one factor may very well dictate the outcome of the analysis," *In re Audrey S.*, 182 S.W.3d at 878, a court is still obligated to consider "all the factors and all the proof." *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017).

---

[8] Effective April 22, 2021, the General Assembly amended Tenn. Code Ann. § 31-1-113(i) changing and adding to the best interest factors and providing that "court[s] shall consider all relevant and child-centered factors applicable to the particular case before the court." Tenn. Code Ann. § 36-1-113(i)(1). In this case, we apply the version of the statute in effect in April 2019 when Mother and Step-Father filed the petition to terminate Father's rights.

Regarding the child's best interests, the trial court found as follows:

The Court further finds by clear and convincing evidence that the Father failed to make an adjustment in his circumstances, or to adjust his conduct or conditions, so as to make it safe for the child to be in his home or in his presence on a regular basis. The Court further finds by clear and convincing evidence that the Father having willfully failed to make contact or have visitations with the child during the relevant period and before and failing to support the child during the relevant period, makes it not in the best interest of the child to maintain Father's parental rights. The Court further finds by clear and convincing evidence that to expose the child to the Father and the physical environment that he has now and may have in the future would have a detrimental effect on the child's emotional, psychological and medical condition which has now been stabilized by the Mother and the stepfather. The Court further finds by clear and convincing evidence that the child is thriving in her current physical environment and that to change that environment and change her caretakers would likely have a detrimental effect on the child's emotional, psychological and medical condition. The Court further finds that because of the Father's wanton disregard by being in and out of jail, committing crimes, repeated incarcerations, substance abuse and failure to provide support for the child all constitute conduct that exhibits a wanton disregard for the welfare of the child. The Court further finds by clear and convincing evidence that the Father's poor judgments and bad acts has effected [sic] the child's welfare and but for the intervention of the Mother, the child would have suffered irreparable harm.

The first best interest factor considers whether a parent "has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent." Tenn. Code Ann. § 36-1-113(i)(1). At the time of trial, Father was incarcerated for possession of a Schedule II drug and driving under the influence. Father admitted that he had been addicted to methamphetamine, marijuana, and pills for approximately fifteen years. He testified that when he was released from jail, he planned to "temporarily" live with his mother and was "hoping" his addiction issues would not continue. Father stated that he is "tired" of abusing drugs and he is "tired of being where [he is] at today." We are certainly hopeful that Father can maintain his sobriety upon his release from jail and make lasting change; however, we are constrained to a review of the evidence of his past and cannot conclude from Father's testimony that he has any definite plans in place to address his longstanding substance abuse so as to make a sustained adjustment in his circumstances. Because of his repeated drug use and uncertain post-incarceration living situation, this factor weighs in favor of termination.[9]

---

[9] The second best interest factor is "[w]hether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that

The third and fourth factors focus on the parent's relationship with the child. The third factor considers whether the parent has maintained regular visitation or other contact with the child, and the fourth factor considers whether a meaningful relationship has been established between the parent and child. *See* Tenn. Code Ann. § 36-1-113(i)(3), (4). The evidence shows that Father voluntarily discontinued his weekend visitation with the child eight weeks before he attended her kindergarten graduation ceremony in May 2018. Mother asserts he appeared "high" at the child's graduation ceremony, and Father failed to produce a negative drug screen in order to resume his visitation. As for his relationship with Lauren, Father testified that he did not know anything about her school, her teacher, her activities, her grades, her friends, or her favorite color. He did not provide any evidence that he had created and maintained a meaningful relationship with his child. As this Court has consistently recognized, "[o]ften the lack of a meaningful relationship between a parent and child is the most important factor in determining a child's best interest." *In re London B.*, No. M2019-00714-COA-R3-PT, 2020 WL 1867364, *12 (Tenn. Ct. App. Apr. 14, 2020). The evidence on the third and fourth best interest factors weighs in favor of termination.

The fifth factor looks at the effect a change in caregivers would have on the child's emotional, psychological, and medical condition. Tenn. Code Ann. § 36-1-113(i)(5). The record shows that the child is in a safe, stable, and loving home where she is thriving. Step-Father wishes to adopt the child. Mother testified that Lauren calls Step-Father "daddy." When asked about the child's relationship with Father, Mother testified as follows:

> Q. And when is the last time that [the child] asked about her biological father?
> A. She actually calls him the bad person, and she has not asked about him in over two years - - no. Probably about two years.
> Q. Does she have any photographs of him?
> A. No.
> Q. Has she asked for any photographs of him?
> A. That's what I was about to say. She's never asked for any.

Mother also testified that Lauren engaged in counseling sessions for several months. Those sessions were beneficial for the child, and the counselor indicated that she was "very stable in the situation that she was going through, and [the counselor] didn't need to speak to her anymore." In contrast, the record shows that Father has done very little to remedy his drug abuse issues, and while we are hopeful that Father can maintain his sobriety when he is released from jail, we are also mindful of his history of relapse. Based on the evidence, we agree that introducing Father back into Lauren's life would likely have a negative effect on her emotional condition. Again, we reiterate that our best interest analysis "must be viewed

---

lasting adjustment does not reasonably appear possible[.]" The trial court made no findings regarding this factor, and there was no evidence to indicate it is applicable to the present case.

from the child's, rather than the parent's perspective." *In re Audrey S.*, 182 S.W.3d at 878. The fifth factor weighs in favor of termination.

Best interest factor six is "[w]hether the parent, or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household." Tenn. Code Ann. § 36-1-113(i)(6). No evidence was presented that Father engaged in abusive or neglectful conduct toward the child. This factor weighs against termination of Father's parental rights.

The seventh best interest factor considers the parent's home environment. *See* Tenn. Code Ann. § 36-1-113(i)(7) ("Whether the physical environment of the parent's . . . home is healthy and safe, . . . or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent . . . consistently unable to care for the child."). At the time of trial, Father was incarcerated. Regarding his plans following incarceration, he stated that he planned to stay with his Mother "temporarily." There was no testimony regarding his Mother's home or its suitability for a child. It is undisputed that over the years Father has had difficulty maintaining his sobriety and has been incarcerated three times and in and out of rehab facilities throughout the child's life. This factor is neutral.

The eighth best interest factor considers whether the parent's mental or emotional status would be detrimental to the child. *See* Tenn. Code Ann. § 36-1-113(i)(8). Father testified that he has a "dual diagnosis, which is substance abuse/mental health disorder." Father did not elaborate on his mental health disorder. When asked if he had a counselor lined up to help him address his "dual diagnosis" when he was released from jail, he responded that he did not, but that "I probably still need to seek that." Without more information about Father's mental status, we cannot say this factor weighs in favor of termination. Factor eight is neutral.

The ninth best interest factor considers whether the parent "has paid child support consistent with the child support guidelines." Tenn. Code Ann. § 36-1-113(i)(9). The record shows that Father was consistent in paying child support for Lauren other than during his period of unemployment. This factor weighs against termination.

After considering the entire record and weighing the best interest factors, we conclude that the combined weight of the proof establishes by clear and convincing evidence that termination of Father's parental rights was in the child's best interest.

CONCLUSION

For the foregoing reasons, we affirm the trial court's termination of Father's parental rights on the statutory ground of failure to visit in the four months preceding Father's

- 21 -

incarceration and affirm the court's conclusion that termination of Father's parental rights is in the best interest of the child. We reverse the trial court's findings regarding the ground of abandonment for failure to support and vacate the trial court's findings regarding the ground of abandonment by an incarcerated parent for wanton disregard. Costs of appeal are assessed against the appellant, Nicholas F., for which execution may issue if necessary.

_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE